## TEXAS & P. RY. CO. v. BUFKIN et al. (No. 595.)

Court of Civil Appeals of Texas. Eastland. July 12, 1929.

344

T. D. Gresham, of Dallas, Douthit, Mays & Perkins, of Sweetwater, and J. M. Harris, of Snyder, for appellant.

C. F. Sentell, of Snyder, for appellees.

LESLIE, J. J. A. Bufkin, the plaintiff, filed this suit against the Roscoe, Snyder & Pacific Railway Company and the Texas & Pacific Railway Company, seeking to recover damages alleged to have been occasioned him by reason of shrinkage in a shipment of cattle made by him over said railway lines from Snyder to Fort Worth. The shrinkage was charged to have resulted from delay in transportation and in the retention of the cattle in the cars for about 16 hours in excess of the time ordinarily required for the due transportation of a shipment of cattle from Snyder to the Fort Worth market. Trial was before the court and jury and upon answers to special issues judgment was rendered in favor of the plaintiff and against the Texas & Pacific Railway Company for the sum of $187.35. On peremptory instruction a verdict was returned in favor of the Roscoe, Snyder & Pacific Railway Company. Judgment accordingly was entered. The Texas & Pacific Railway Company alone appeals. The parties will be referred to as in the trial court.

By the first proposition the defendant complains that no evidence was introduced showing what would have been the market value of the plaintiff's cattle at Fort Worth on the date he alleged and proved they should have arrived at their destination. By this proposition the defendant sets forth that the true measure of damages for negligent delay of a carrier in transporting cattle to market is the difference in the market value of the cattle at the time and in the condition they should have arrived at destination, had they been transported without negligence, and the market value of the cattle at destination at the time and in the condition they actually arrived. The defendant's proposition states a correct measure of damages in such cases, as is held by numerous authorities, among which are the following: Hines v. Edwards (Tex. Civ. App.) 228 S. W. 1117; Gulf, C. & S. F. Ry. Co. v. Gross (Tex. Civ. App.) 204 S. W. 697; Texas & P. Ry. Co. v. Prunty, 111 Tex. 162, 230 S. W. 396; St. L. & S. F. Ry. Co. v. Dean (Tex. Civ. App.) 152 S. W. 527; Dickerson v. San Antonio, Uvalde & Gulf Ry.

Co. (Tex. Civ. App.) 170 S. W. 1047; Latham Co. v. Snell (Tex. Civ. App.) 176 S. W. 917.

In the above case of Texas & P. Ry. Co. v. Prunty, our Supreme Court, through Chief Justice Phillips, succinctly states the rule as follows: "The measure of damages in the case was the difference between the market value of the animals at destination in the condition in which they would have been delivered but for the carrier's negligence, and their market value in their actual condition as caused by its negligence. The only way the damages could be proved was by evidence of such respective values."

But the point here presented by the defendant is that no evidence was tendered in the trial below establishing the market value of the cattle on the date the plaintiff alleged and proved the shipment should have reached its destination. We are not prepared to hold that there was no evidence of this alleged fact, but in view of another trial we will state that the testimony relating to such market value is rather confusing, and upon another trial it should be clarified. The testimony indicates the shipment left Snyder about 3 o'clock p. m., October 11, 1927, and according to plaintiff's testimony should have "reached Fort Worth somewhere from 7 o'clock the next morning until 1 o'clock the next evening." He further testifies that the usual and ordinary time consumed in such shipment was about 21½ hours. Again he testifies: "I was shipping those cattle for the market on the 13th, the same market that I sold them on. I would have sold them on the same market that I did sell them on if they had been transported within the usual and ordinary time." It does not clearly appear whether the plaintiff estimates his damages based upon the market value of the 13th of October or the 12th, and the record would seem to indicate that there was a market for the stock on the 12th and that it was available to the plaintiff. In other words, at another trial a concrete application of the rule laid down in the above authorities will enable the plaintiff to direct his proof more specifically to the difference between the market value of the cattle in the condition in which they would have arrived but for the negligence of the defendant, and their market value in the condition in which, by reason of such negligence, they did arrive. The market value of the animals at destination in the condition in which they would have been delivered but for the carrier's negligence must not be lost sight of. The record before us seems to confuse the market value of the date the shipment should have reached its destination, transported with due diligence and dispatch, with the market value of the date the shipment, by reason of the defendant's alleged negligence, in fact reached its destination.

Attention is called to another phase of the

plaintiff's pleadings. He seeks recovery of "the sum of $61.20 damage in excess shrinkage," and seeks a recovery of an additional sum of $252.30 ($1 per 100 pounds on 25,230 pounds, the weight of the cattle), the "depreciation in the market value of said cattle by reason of the excess shrinkage, loss in flesh and weight, and the drawn and emaciated condition of said cattle." By reference to the legal rule for the measurement of damages in a case of this kind it would appear that the plaintiff seeks a recovery of double damages in the sum of $61.20. The point is not raised, and while we are not called on to pass upon it, we make the suggestion in order that the matter may receive due consideration when the plaintiff's case is again presented for trial.

■ The complaint is made that the court erred in submitting to the jury the issue of damages in the following language: "What was the amount of damages sustained by the plaintiff J. A. Bufkin by reason of excess shrinkage and loss of weight and flesh, and drawn and emaciated condition and bad appearance of said thirty-nine head of cattle?"

The objection is that the issue did not submit any legal measure of damage or confine the jury in determining their answer to this issue to the difference in the market value at destination of the plaintiff's cattle at the time and in the condition in which they actually arrived, and at the time and in the condition they would have arrived had they been transported within the usual and ordinary time, and with proper diligence and dispatch. This proposition will have to be sustained. The true measure of damage has hereinbefore been stated, and the authorities in support of same cited. In the submission of this issue no reference was made nor any proper instruction given as to such measure of damage to aid the jury in answering the issue. The jury was given no guide or chart by which to measure with legal accuracy the amount of damages, if any, that should have been awarded the plaintiff under the pleadings and the testimony. See opinions in the cases of Panhandle & S. F. Ry. Co. v. Parrish (Tex. Civ. App.) 281 S. W. 887; Texas & P. Ry. Co. v. Prunty, 111 Tex. 162, 230 S. W. 396; Gulf, C. & S. F. Ry. Co. v. Gross (Tex. Civ. App.) 204 S. W. 697. Numerous other authorities to the same effect might be cited.

Proposition 3 raises substantially the same question as that presented by proposition 1. The contention is advanced again, and from a somewhat different angle, that there is no evidence in the record showing the market value of plaintiff's cattle at destination at the time and in the condition they would have arrived had they been transported without negligence. In support of this proposition the same authorities are cited as under proposition 1. For the reasons there given this proposition will be overruled, and since it pertains to a matter of testimony which will doubtless differ on the next trial from what it was on the last, it is unnecessary that this proposition be further discussed.

■ By the fourth proposition the defendant complains that, over its objection, the court gave a general charge upon the burden of proof in connection with the special issues submitted. The record bears out the contention and the proposition will be sustained. In the opinion in Linn Motor Co. v. Wilson et al. (Tex. Civ. App.) 14 S.W.(2d) 867, the court, in disposing of a like proposition complaining of a charge in substance the same as that given by the trial court in the instant case, used this language: "According to the authorities in this state, relative to this question, the court was in error in giving the charge on the burden of proof, as above shown, and for that reason the judgment in this case must be reversed. Where this character of charge has come before any of our appellate courts, it has been condemned as reversible error, where the case was submitted upon special issues. It would serve no useful purpose for us to discuss this matter at length, because the reasons for condemning this charge are stated in the following authorities: Wootton v. Jones (Tex. Civ. App.) 286 S. W. 680; M., K. & T. Ry. Co. v. Thomason (Tex. Civ. App.) 3 S.W.(2d) 106; Morris v. Davis (now Nelson) Agent (Tex. Civ. App.) 3 S.W.(2d) 109."

■ By the fifth proposition the defendant contends that, in the submission of issue No. 1 the court submitted more than one contested issue. An examination of the issue discloses that it embodies two material questions. The first is, did defendant fail and refuse to transport the cattle in the usual and ordinary time of passage over the road from Roscoe, Tex., to the Fort Worth Stockyards? and, second, was the failure and refusal so to do negligence on the part of the defendant? This is a substantial statement of the issues presented in one question, and such questions are condemned by the authorities as being duplicitous or multifarious. See Lancaster & Wallace v. Rogers et al. (Tex. Civ. App.) 258 S. W. 283; Kansas City, M. & O. Ry. Co. v. Moore (Tex. Civ. App.) 11 S.W.(2d) 335, and the numerous authorities cited therein.

Article 2189 of the Revised Statutes of 1925, setting forth the duties of the court in the submission of a case on special issues, describes: "Such special issues shall be submitted distinctly and separately. Each issue shall be answered by the jury separately."

For the reasons assigned, the judgment of the trial court is reversed, and the cause is remanded for another trial.