STANDARD et al. v. TEXAS PACIFIC COAL & OIL CO. et al.

No. 922.

Court of Civil Appeals of Texas. Eastland.
Dec. 11, 1931.

Rehearing Denied Jan. 22, 1932.

On Second Rehearing, Feb. 5, 1932.

On Third Rehearing March 11, 1932.

Waldrip, Lester Waldrip, and Peggy Joyce Waldrip, minors, suing by Mrs. Lela Waldrip Standard as their next friend. The defendants were Texas Pacific Coal & Oil Company, a corporation, Frank Kribs, and George Powers. Plaintiffs sought to recover damages for the alleged wrongful killing of Aaron Waldrip, the former husband of Mrs. Standard, and the father of said minors. There was another claim for slander or libel, or both, against the said defendants, which, upon the court's sustaining a plea in abatement for misjoinder of causes of action, was dismissed. Liability of the Texas Pacific Coal & Oil Company upon the claim for damages for the wrongful death was sought to be shown by allegations to the effect: (1) That George Powers, its agent, servant, and employee, charged with certain duties as watchman upon one of its leases, and acting under its instructions to kill depredators upon the lease, shot and killed said Waldrip; and (2) that said Powers shot and killed said Waldrip in pursuance of and as the result of a conspiracy and agreement so to do between all the defendants. Frank Kribs was sought to be held liable on the ground that he, as an officer and superintendent of production of the corporation, made the agreement or gave the directions to the watchman, Powers, constituting the alleged conspiracy. The liability of Powers was sought to be shown: (1) Upon the ground that he did the killing; (2) that in doing so he was acting for the corporation as its servant and agent, as well as for himself; and (3) that he did so in pursuance of a conspiracy between him and one or all of his codefendants, which resulted in killing of the said Waldrip.

The trial court sustained a plea in abatement of plaintiffs' suit because of misjoinder of causes of action. By this plea it was contended that a cause of action for libel or slander was improperly joined with a cause of action for wrongful death. The court having sustained the plea, the "plaintiffs," in the language of the judgment, "dismissed their action for libel and slander," and it was "therefore ordered * * * that said action for libel and slander be and the same is hereby dismissed, and said allegations stricken from plaintiffs' petition." By such action a dismissal of the case was avoided, and upon a trial of the action for wrongful death, the jury, in response to special issues, returned their verdict wherein they found from a preponderance of the evidence: (1) That George Powers, at the time he shot and killed Aaron Waldrip, was not acting in the scope of his employment by the Texas Pacific Coal & Oil Company. (2) That he killed Waldrip with malice. (3) That Powers, at the time, was not acting under the instructions of the Texas Pacific Coal & Oil Company. (4) Nor un-

Frank Judkins and Owen & Owen, all of Eastland, for appellants.

John Hancock, of Fort Worth, and Frank Sparks, of Eastland, for appellees.

FUNDERBURK, J.

The plaintiffs below were Mrs. Lela Waldrip Standard, joined pro forma by her husband, G. H. Standard, together with Jack

der the instructions of Frank Kribs. (5) That at the time he was not acting in pursuance of a previously formed conspiracy between himself and Frank Kribs and the Texas Pacific Coal & Oil Company. (6) Nor a previously formed conspiracy between himself and the Texas Pacific Coal & Oil Company. (7) Nor a previously formed conspiracy between himself and Frank Kribs. (8) That $300, if paid at the time in cash, would fully compensate Mrs. Standard for loss sustained in the death of said Waldrip. (9) That $900 ($300 to each) would reasonably compensate the three minor children for such death. (10) That $400 was the amount assessed as exemplary damages. And (11) that at the time Powers shot and killed Waldrip he did not reasonably believe himself in danger of death or serious bodily injury.

Upon this verdict the court gave judgment for defendants Texas Pacific Coal & Oil Company and Frank Kribs, and gave judgment for plaintiffs against George Powers for an aggregate of $1,600. The plaintiffs alone have appealed.

■ Appellants present thirty-nine assignments of error and eighteen propositions thereunder. Appellee Texas Pacific Coal & Oil Company makes just criticism of some of the propositions and objects to our consideration of same. For example, one proposition is: "It is error for the trial court to give a general charge to the jury in a case submitted on special issues." Another is: "A charge on the weight of the evidence is reversible error." Still another is: "All issues raised by the pleadings and the evidence should be submitted to the jury." There are many others of the same nature. The objection must be overruled because the last Legislature so amended Revised Statutes 1925, art. 1757, as to eliminate propositions as an essential part of a brief (Acts 1931, p. 68, c. 45, § 1 [Vernon's Ann. Civ. St. art. 1757]). In prescribing the essential requisites of a brief so that in practical effect to leave it optional with counsel whether a brief shall be of any assistance to the court, it appears that propositions, along with all other requirements existing under previous rules and designed to lighten the labors and conserve the time of the court, have been omitted. Such being the case, no question can properly arise as to the sufficiency of propositions.

■■ Appellants' first contention is that the undisputed evidence shows substantial pecuniary loss and the verdict is for nominal damages only, for which reason the judgment should be reversed. The merit in this point is dependent upon the correctness of the proposition that the award of $1,600 damages constitutes an award of only nominal damages. We are not prepared to hold that $1,600 (or $1,200 the latter being the amount awarded as actual damages) is nominal. Whether such damages be inadequate is a different question which, because not presented, we do not feel called upon definitely to determine, although we are inclined to the view that, under this record, we could not hold same to be inadequate.

■ It is next insisted that the court erred in sustaining the plea in abatement. We believe that this contention is correct. The plaintiff simply sought a recovery against three defendants upon two different causes of action sounding in tort. Under such circumstances we understand that two or more torts may properly be joined in the same suit, even though they be distinct. Wallis v. Walker, 73 Tex. 8, 11 S. W. 123; Cody v. Lowry (Tex. Civ. App.) 91 S. W. 1109; Carter v. Wallace, 2 Tex. 206; Hamilton v. Ward, 4 Tex. 356; Jackson v. Missouri, K. & T. Ry. Co. (Tex. Civ. App.) 78 S. W. 724.

■ However, plaintiff, by voluntarily dismissing one of the causes of action and proceeding to trial and judgment upon the other, waived the error of the court in sustaining the plea in abatement. The action of the court made necessary by sustaining the plea in abatement was to dismiss the suit, including both causes of action. Plaintiffs avoided that consequence in the only way possible, namely, by dismissing one of them. Such action in legal effect was equivalent, we think, to a voluntary nonsuit. It constituted an acquiescence in the action of the court, whether right or wrong.

■ The court allowed each of the three defendants six peremptory challenges of jurors. Such action is complained of by a bill of exception insufficient to present any question of prejudicial error in this respect. The bill does not show that sufficient acceptable jurors did not remain after the challenges were made, nor that, because of such ruling, plaintiffs were forced to accept objectionable jurors. Without such showing it has been held that no prejudicial error is manifest. Snow v. Starr, 75 Tex. 411, 12 S. W. 673; Wolf v. Perryman, 82 Tex. 116, 17 S. W. 772; Waggoner v. Dodson, 96 Tex. 7, 68 S. W. 813, 69 S. W. 993.

In one statement and argument addressed to a number of different assignments of error, appellants complain of certain directions and instructions given to the jury which, for convenience, we number and quote as follows:

1. "To guide you in answering the foregoing special issues Nos. 5 and 6, you are instructed that none of the agents and employees of the Texas Pacific Coal & Oil Company would have the right to make and enter such an agreement and conspiracy so as to bind the said Texas Pacific Coal & Oil Company, unless they were authorized to do so

by the said Texas Pacific Coal & Oil Company itself."

Said special issues Nos. 5 and 6 were as follows:

"Special Issue No. 5: Do you find from a preponderance of the evidence that George Powers, at the time he shot and killed Aaron Waldrip, was acting in pursuance of a previously formed conspiracy between himself, Frank Kribs and the Texas Pacific Coal & Oil Company?"

"Special Issue No. 6: Do you find from a preponderance of the evidence that George Powers, at the time he shot and killed Aaron Waldrip, was acting in pursuance of a previously formed conspiracy between himself and Frank Kribs?"

2. "You are further instructed that, if you answer Special Issue No. 11 in the affirmative, then you need not answer any other issue in this case."

Issue No. 11 was as follows: "Do you find from a preponderance of the evidence that, at the time George Powers shot and killed Aaron Waldrip, did he reasonably believe himself in danger of death or serious bodily injury?"

3. "You are instructed that you are the judges of the facts proved, of the credibility of the witnesses, and of the weight to be given their testimony, but you are bound to receive the law from the court, which is here given you and be governed thereby."

4. "You are further instructed that you will not discuss what the effects of your answers will be, who will be entitled to judgment under such answers, but you will only answer the questions as you find the facts to be."

■ One common objection made to all of these instructions was that same constituted general charges improper to be given in a cause submitted upon special issues. It is undoubtedly the settled law in this state that it is error to give the jury a general charge upon the law of the case when special issues are submitted. Humble O. & R. Co. v. McLean (Tex. Com. App.) 280 S. W. 557, 559; McFaddin v. Hebert, 118 Tex. 314, 15 S.W. (2d) 213; Texas & N. O. Ry. Co. v. Harrington (Tex. Com. App.) 235 S. W. 188; J. M. Radford Gro. Co. v. Andrews (Tex. Com. App.) 15 S.W.(2d) 218; Texas & N. O. Ry. Co. v. Parry (Tex. Civ. App.) 1 S.W.(2d) 760; Western Union Tel. Co. v. Rutledge (Tex. Com. App.) 15 S.W.(2d) 210; Kansas City M. & O. Ry. Co. v. Moore (Tex. Civ. App.) 11 S.W.(2d) 335; Freeman v. Galveston, H. & S. A. Ry. Co. (Tex. Com. App.) 287 S. W. 902; Worden v. Kroeger (Tex. Com. App.) 219 S. W. 1094; A. J. Anderson & Co. v. Reich (Tex. Com. App.) 260 S. W. 162; Connellee v. Nees (Tex. Com. App.) 266 S. W. 502; St. Louis S. W. Ry. Co. v. Hudson (Tex. Civ. App.) 9 S.W. (2d) 511; Id. (Tex. Com. App.) 17 S.W.(2d) 793; Wallace v. Johnson (Tex. Civ. App.) 39 S.W.(2d) 140; Cameron Compress Co. v. Jacobs (Tex. Civ. App.) 10 S.W.(2d) 1040; Buro v. Home Benefit Ass'n (Tex. Civ. App.) 28 S.W.(2d) 902; Gonzalez v. Davila (Tex. Civ. App.) 26 S.W.(2d) 718; Texas & Pacific Ry. Co. v. Boaz (Tex. Civ. App.) 22 S.W.(2d) 492; Texas Indemnity Ins. Co. v. Allison (Tex. Civ. App.) 31 S.W.(2d) 319; Solo Serve Co. v. Howell (Tex. Civ. App.) 35 S.W.(2d) 474; St. Louis S. W. Ry. Co. v. McCrearry (Tex. Civ. App.) 35 S.W.(2d) 790; Dallas Hotel Co. v. Fox (Tex. Civ. App.) 196 S. W. 647; O'Keeffe v. Werthmann (Tex. Civ. App.) 38 S.W.(2d) 401; Ft. Worth & D. C. Ry. Co. v. Morrow (Tex. Civ. App.) 255 S. W. 674.

In the first-cited case it was said that: "A 'general charge' is an instruction given by the court to the jury as to the law pertaining to the case, or any phase thereof." It was further said: "For a charge to be a general one, it is not necessary that it be one submitting an issue of fact for determination by the jury, with instruction that if they find such facts to exist to find verdict thereon in favor of one of the parties." With reference to the presumption of injury resulting from an error in giving such general charge, it was said in the same opinion: " * * * injury to the objecting party is presumed; and, unless it clearly appears that no injury or prejudice results to him, or his cause, he is entitled to a new trial." Tested by the definition given, more than one of the instructions complained of would appear to be general charges.

■ R. S. 1925, art. 2184, provides for two distinct methods of submitting cases to juries. One of these methods is governed by the provisions of R. S. 1925, arts. 2185 to 2188, inclusive. This method involves the giving of general and special charges or instructions. The words "charges" and "instructions" mean the same thing and are used interchangeably, as is well illustrated in articles 2186 and 2187. The other method is governed by articles 2189 and 2190. When the latter method is adopted, charges or instructions "on the law of the case" are not to be given, and, as already shown, the giving of same over proper objection is error. The rule, however, does not prohibit the giving of all instructions. The giving of some instructions in a case submitted upon special issues may be not only not error, but entirely proper and salutary, and in some cases so necessary to the proper administration of justice as that the failure or refusal of the court to give same may constitute reversible error. One kind of instructions, the giving of which in such a case has been sustained, is well illustrated in instruction No. 4, above, wherein the court charged the jury that: "You * * * will not discuss what the effects of your answers will be,

who will be entitled to judgment under such answers, but you will answer the questions as you find the facts to be." Instructions of such nature denominated "admonitory charges" have been held, when correct, to be proper and salutary. Reed v. Bates (Tex. Civ. App.) 32 S.W.(2d) 216; Houston Belt & Terminal R. Co. v. Davis (Tex. Civ. App.) 19 S.W.(2d) 77; Southern Traction Co. v. Wilson (Tex. Com. App.) 254 S. W. 1104; Luse v. Beard (Tex. Civ. App.) 252 S. W. 243; St. Louis, S. F. & T. Ry. Co. v. Allen (Tex. Civ. App.) 296 S. W. 950.

It is not for the reason that such charges are abstractly correct and salutary, we take it, that they have been held not to come within the rule. The distinction between such charges and those prohibited is not one predicated upon the correctness or incorrectness of the instructions. Then what is the principle of distinction? The statutes themselves do not declare that a general charge shall not be given in a case submitted on special issues. Why then have the courts held that it is error to do so? One reason, as indicated in the cases above cited, is that it would tend to inform the jury of the legal effect of their answers, contrary to the basic theory of submitting causes upon special issues. Whether it had such effect or not, it would at least constitute a suggestion to the jurors of some responsibility on their part for the proper application of the law. When the reason for the rule is considered, it will readily be seen that special significance should be attached to the meaning of the words, "law of the case." It is a charge "on the law of the case" (R. S. art. 2184) which the rule prohibits. In a very proper sense admonitory charges are not charges on the law of the case. They do not therefore, accurately speaking, constitute an exception to the rule, but simply do not come within the terms of the rule.

And this suggests the further query whether any charges which are equally true of all cases, which can have no special applicability to the case being tried, and which do not tend to indicate the legal effect of the jury's answers nor suggest any responsibility of the jury for applying the law to the facts of the particular case, can properly be regarded as charges "on the law of the case." Let us take for example the third instruction of which complaint is made, namely: "You are instructed that you are the judges of the facts proved, of the credibility of the witnesses and of the weight to be given their testimony," etc. Undoubtedly this is a charge on the law. But it is no more a charge on the law of *the particular case* than of any other civil case that may be tried. No reason, so far as we can see, which has given rise to the rule, would apply to such an instruction. This being the case, we think

we may reasonably and logically hold that such is not a charge on the *law of the case* within the meaning of the rule in question. A charge to this effect was held proper in Dickinson v. Sanders (Tex. Civ. App.) 39 S. W.(2d) 102.

Instruction No. 2, reading, "You are further instructed that if you answer Special Issue No. 11 in the affirmative, then you need not answer any other issue in this case," differs from the others above considered. One such difference is that it does pertain exclusively to the particular case. But it is in no proper sense a charge on the law. For this reason it falls without the operation of the rule. Such directions have been sustained. Ineeda Laundry v. Newton (Tex. Civ. App.) 33 S.W.(2d) 208; Standard Accident Ins. Co. v. Williams (Tex. Civ. App.) 4 S.W.(2d) 1023.

For the reason assigned we sustain the one here as against the contention that it is a general charge on the law of the case.

We think the first instruction is a charge on the law of the case and subject to the objection urged. It instructs upon a question of law as bearing upon the very issues submitted to the jury. It is in no sense an explanation or definition of legal terms.

Its clear purport and necessary effect was precisely the same as if it had instructed the jury that, unless they should find that the Texas Pacific Coal & Oil Company itself (as distinguished from its agents and employees) authorized Kribs or Powers or both to make the agreement for it, which was claimed to constitute the conspiracy, they could not answer special issue No. 5 in the affirmative. In St. Louis S. W. Ry. Co. v. Hudson, supra, a question of the authority of an agent was sought to be determined by the giving of an instruction directing the jury to answer a question submitting that issue as they should find the facts to be as detailed in the charge. The instruction was condemned as a general charge on the law of the case. The Court of Civil Appeals held the error harmless, but on this point was reversed by the Supreme Court. 17 S.W.(2d) 793. In Kansas City, M. & O. Ry. Co. v. Moore, 11 S.W.(2d) 335, this court, in an opinion by Judge Leslie, held that a material issue in the case could not be submitted to the jury by means only of an instruction having the effect of directing the jury to answer some other issue, accordingly as they found the facts to be upon the unsubmitted issue. The instruction was condemned as a general charge under the rule. So, in this case the issue of the authority or want of authority of Kribs and Powers was not submitted to the jury as a special issue, but was submitted as an instruction dealing in part with a legal right having the necessary effect of requiring the jury to answer an is-

sue that was submitted, accordingly as they should find the question of.authority.

We need not determine whether, as a charge on the law of the case, it is abstractly correct or not. As already said, correctness is not the test. It does not affirmatively appear that it was harmless. Appellee insists that it was harmless, based upon its .contention that the court should have given it a peremptory instruction upon the issues to which the charge relates. If that question had been so presented as to authorize us to determine it, and we should have concluded that a peremptory instruction should have been given, then it would appear that the charge was immaterial and harmless. .But appellee presents no cross-assignment of error contending that the court erred in refusing a peremptory instruction. It would be necessary for us to read the entire statement of facts to determine that question. We are not authorized to do that. To hold that we are authorized to do so would be tantamount to a holding that cross-assignments of error are never necessary, since in practical effect the only purpose they can ever serve is to show that a judgment is correct or erroneous, as contended, regardless of the merit or want of merit in. the assignments of error of the adverse party.

For this error we are of opinion that the judgment must be reversed and the cause remanded, which is accordingly so ordered.

### On Rehearing.

In our original opinion we incorrectly quoted special issue No. 6. The issue correctly stated was as follows: "Do you find from a preponderance of the evidence that George Powers, at the time he shot and killed Aaron Waldrip, was acting in pursuance of a previously formed conspiracy between himself and the Texas Pacific Coal & Oil Company?"

One contention of appellee urged in its motion for rehearing is to the effect that we erred in reversing the case upon the ground stated in the opinion because the objection to said charge and the assignment of error presenting the question complained of same only on the ground that it was given in connection with special issue No. 5, saying nothing about special issue No. 6, and since the jury in their answer to special issue No. 6 acquitted appellee of complicity in the alleged conspiracy, the instruction complained of was therefore immaterial and harmless. The gist of the objection and the assignment was not a complaint as to any particular connection with the issues in which the charge was given, but that it was a general charge, improper to be given in the case submitted, as .it was, upon special issues. It would have been just as objectionable had neither special issue No. 5 nor 6 been mentioned, and

for that reason we believe the point not well taken.

It is further contended by appellee that its "General Counter Propositions" were, in substance and effect, "cross-assignments of error," and that therefore we should have examined the statement of facts to verify its contention that there was no evidence to support the issue of conspiracy from which it would have appeared the general instruction was harmless. Said "General. Counter Propositions" are as follows:

"First General Counter Proposition: The court should have directed the jury to return a verdict in favor of Texas Pacific Coal & Oil Company and the judgment of the court in favor of Texas Pacific Coal & Oil Company is correct, because, under the pleadings and evidence, it was not shown that Texas Pacific Coal & Oil Company entered into a conspiracy, as alleged, to kill Aaron Waldrip.

"Second General Counter Proposition: The court should have directed the jury to return a verdict in favor of Texas Pacific Coal & Oil Company, and the judgment of the court in favor of Texas Pacific Coal & Oil Company is correct, because, under the pleadings and the evidence, George Powers, an employee of Texas Pacific Coal & Oil Company, did not kill Aaron Waldrip while in the course of his employment."

We are of opinion that the counter propositions cannot properly be regarded as assignments of error. They do not specify any particular *action* or *ruling of the court* as being error. "An assignment of error is a formal complaint of some action of the trial court as distinguished from a proposition which merely sets forth reasons why such action is erroneous." 3 Tex. Jur. p. 798, § 565, and authorities there cited. "In general, the function of a proposition is to show in what respect and to point out reasons why the *action or ruling* (italics ours) of the court is erroneous, i. e. to set forth the reason or reasons supporting the assignments." 3 Tex. Jur. p. 877, § 612. Appellee's "General Counter Propositions" are but reasons, properly denominated "propositions," which would have supported a cross-assignment of error to the effect that the court erred in overruling its request to peremptorily instruct a verdict in its favor.

In holding, as we did in the original opinion, that we were under no duty to read the entire statement of facts to ascertain whether, as contended by appellee, there was no evidence to raise an issue of conspiracy, and, if such was found to be the case, to hold that the general instruction was, for that reason, harmless, we reached the conclusion based upon one reason, namely, that the only purpose that any cross-assignment of error could serve would be to show that the errors complained of by the appellant were

harmless, or, in other words, that, regardless of the merit of same, the judgment under attack was correct for the reasons appearing by the propositions supporting the cross-assignments of error. We reasoned that, if we could search the entire record, including the statement of facts, merely to ascertain that an assignment which we would otherwise consider as requiring a reversal was in fact harmless, then there would never be any necessity of presenting cross-assignments of error—a proposition to which we were unwilling to stand committed. Upon further reflection we are convinced that we were in error in concluding that a cross-assignment of error could in no case serve any other purpose than to show that assignments of error, though meritorious, were harmless. Many cases can no doubt be found where the effect of cross-assignments of error has not been merely to show that the judgment under attack was correct upon other grounds. The case of Reclamation Co. v. Simmons, 293 S. W. 194, by this court, will serve as an example. There the court reversed and remanded the case solely upon a cross-assignment of error which, without same, the judgment would have been affirmed. The cross-assignment of error therefore did not present a reason why the assignments of the appellant were immaterial. The reason for our former holding having failed, the conclusion based thereon was not warranted. We have concluded that, if it is not a question already foreclosed by the decisions, nevertheless, as a matter of good practice, whenever it may be suggested to us that any part of the record in a case, including the statement of facts, will disclose that an apparently prejudicial error is harmless, it is our duty to examine the record to ascertain if such be the case in order to prevent a reversal for error which the record shows was harmless.

We have made a careful study of the entire record to ascertain if there was presented an issue of conspiracy for the jury. On the trial Mrs. Standard, the plaintiff, testified that, on a former trial of the case, Frank Kribs, shown by other evidence to have held the position of district superintendent of the production department, in the employ of appellee, among other things, testified: "That the Texas Pacific Coal & Oil Company furnished the gun and ammunition that my husband was killed with, and said they gave them orders to keep everybody off the lease, and said they told them that if they caught anybody on the lease to kill them and leave them where they killed them, and let somebody else find them." Aleck Eakins testified that George Powers "said he had his wife drive up through the Butler pasture and he sat in the back seat and he intended to shoot the first Adams of that bunch that he caught over there." We are unable to say that this testimony, in connection with all other testimony which may be regarded as circumstantial evidence, does not raise an issue of fact as to the alleged conspiracy. We think the entire testimony favorable to appellant's contentions was clearly sufficient to raise an issue of fact as to whether appellee conspired with George Powers to protect the Butler lease by the use of unlawful means from trespasses and depredations, of which Adams and members of his family, including the deceased, were under suspicion. One of the ways in which a conspiracy may exist is through a combination by two or more persons to accomplish a lawful purpose by criminal or unlawful means. 9 Tex. Jur. p. 393. Regardless of the extent or nature of prior trespasses and depredations, appellee would have had no right to enter into an agreement to shoot the first one of the persons under suspicion that was found upon the lease. Such an agreement being unlawful, "an offense is deemed to have been committed where an overt act in pursuance of the unlawful combination is performed by anyone of the co-conspirators or by any other person at their instigation." 9 Tex. Jur. p. 394. "A corporation may be held liable for damages caused by a conspiracy in the same way and to the same extent that a natural person may be." 12 C. J. p. 610, § 177.

The weakest point in the evidence is that, if any, to show that the killing as it actually transpired was in furtherance of the common design and in accordance with the general plans comprising the unlawful agreement. Id., § 178. Upon this point the rule is: "* * * Whether the act was an ordinary and probable effect of the common design of the conspiracy, or whether it was a fresh and independent product of the mind of one of the conspirators outside of, or foreign to, the common design * * * are questions for the jury to determine." 12 C. J. p. 646, § 256; Lyons v. State, 30 Tex. App. 642, 18 S. W. 416; Bowers v. State, 24 Tex. App. 542, 7 S. W. 247, 5 Am. St. Rep. 901; Kirby v. State, 23 Tex. App. 13, 5 S. W. 165. Of course, if there was no evidence that could link the killing to the agreement there would be nothing to submit to the jury, but since "proof of such an unlawful enterprise must in the very nature of things be made by circumstances" (9 Tex. Jur. p. 400, § 21), we have concluded that we would be unwarranted in holding that there was no evidence showing that the killing of Aaron Waldrip by George Powers was in pursuance of an agreement (of which there was some evidence) to protect the Butler lease by the employment of unlawful means.

It is a little difficult to see how appellee could consistently be acquitted of any liability on the ground of George Powers being its employee, and yet, upon the same

facts, be liable as a party to a conspiracy with him; but we are not prepared to say that a question of liability upon the one ground would be conclusive upon the other. In Yates v. Garden City Sugar & Land Co., 117 Kan. 405, 231 P. 1034, a demurrer to evidence was sustained in so far as it was claimed to show liability of a' principal for its agent, but was overruled in so far as it was claimed to show liability on the ground of a conspiracy.

We are therefore, for the reasons stated, not prepared to hold that the giving of the general charge was harmless, which leads us to conclude that the motion for rehearing should be overruled, and it is accordingly so ordered.

### On Second Motion for Rehearing.

In holding, as we did, in overruling the first motion for rehearing of the Texas Pacific Coal & Oil Company, that certain testimony of Mrs. Standard and Aleck Eakins, set out in the opinion, when considered "in connection with all other testimony which may be regarded as circumstantial evidence," constituted some evidence to raise an issue of fact as to the alleged conspiracy, we were of opinion at the time that the other evidence alone would not raise such issue.

Our attention is called to the fact that there was other evidence of the same general nature as that given by Mrs. Standard and Aleck Eakins, being the testimony of Oscar Petty, as follows: "He (that is, George Powers) said * * * he had been instructed to carry a gun and shoot anyone he caught out there." This statement accredited to Powers was made in response to an inquiry from the witness seeking information as to the nature of the instructions that had been given him, and hence the statement was not made by Powers while in the discharge of any of his duties as watchman.

By a second motion for rehearing said appellee points out that all of the testimony which we deemed sufficient to support our conclusion, and including therewith said testimony of Oscar Petty, was, as to said company, hearsay. The testimony was regarded as evidence of admissions against interest, but it appears to be true (a point we overlooked) that each and all of the statements accredited to Kribs and Powers were not made while in the discharge of the duties owing by either to the Texas Pacific Coal & Oil Company. Their statements therefore were no more the admissions of said company than if made by any one else. They were just as certainly hearsay and therefore incompetent. Southern Surety Co. v. Nalle & Co. (Tex. Com. App.) 242 S. W. 197; Vicksburg, etc., R. Co. v. O'Brien, 119 U. S. 99, 7 S. Ct. 118, 30 L. Ed. 299.

The testimony being hearsay and incompetent should not be considered in determining if there was any evidence of conspiracy Henry v. Phillips, 105 Tex. 459, 151 S. W. 533; Hamon v. Sanderford (Tex. Civ. App.) 28 S.W.(2d) 861.

We have therefore concluded that we were in error in holding that the charge of the court was not shown to be immaterial, but on the contrary have concluded that the record affirmatively discloses that it was not harmful, since the evidence did not raise an issue of fact concerning the alleged conspiracy.

For this reason our former judgment reversing and remanding the case should be set aside, said second motion for rehearing should be sustained, and the judgment of the trial court affirmed, all of which is accordingly so ordered.

### On Third Motion for Rehearing.

In appellants' motion for rehearing other evidence is quoted which would appear to be of like character as that which we held to afford some evidence of a conspiracy when taken in connection with other facts and circumstances of the case, and which, unlike the other, at least in part, would appear not to be subject to the objection that it was hearsay. Testimony from the witness Oscar Petty is quoted as follows: "I had a conversation with Frank Kribs with reference to my duties on the Butler lease * * * and in that same conversation *he said that if we found any of them out there just to leave them where we find them and let somebody else find them.* * * * We were talking one day, Mr. Kribs, Mr. Campbell and myself. We had all met there on the lease and we were talking about all of this trouble, the stealing of the stuff out there—we had been losing some oil bearings and such like—and we were discussing what should be done about it, and Mr. Campbell asked me if I had a good gun and I told him I did, and he said, 'Well, I want you to carry that gun on the lease and I will furnish you all the ammunition you use.' *Said he wanted me to shoot any of that bunch I caught out there around the lease,* but that he didn't want me to kill anybody." (Italics ours.)

In passing upon appellees' motion for rehearing this testimony was noticed, but the statement of facts discloses that it was excluded from consideration as to the Texas Pacific Coal & Oil Company. As to that defendant therefore it was just the same as if it had not existed.

We have carefully considered appellants' motion for rehearing and are not convinced that we should make any other disposition of the appeal, and that therefore said motion should be overruled, which is accordingly so ordered.